# ANSLEY *v.* AINSWORTH.

APPEAL FROM THE UNITED STATES COURT IN THE INDIAN TERRITORY.

No. 136. Submitted December 20, 1900.—Decided February 11, 1901.

The legislation in respect of the United States court in the Indian Territory considered: it is *held* that an appeal does not lie directly to this court from a decree of the trial court in the Indian Territory, although the suit in which the decree is rendered may have involved the constitutionality of an act of Congress. Whether an appeal lies to this court from the Court of Appeals of the Indian Territory in such cases is a question which does not arise on this record.

THIS was a bill filed in the United States Court in and for the Central District of the Indian Territory by W. H. Ansley, M. H. Gleason and R. O. Edmonds against N. B. Ainsworth,

L. C. Burriss, O. E. Woods, James Elliott and the Ola Coal and Mining Company, alleging: That Ansley was by blood a member and citizen of the Choctaw Nation of Indians; that Gleason and Edmonds were citizens of the United States by birth, who by intermarriage with members of the Choctaw Nation had become citizens of that nation; that Ainsworth was a citizen of the Choctaw Nation and Burriss a citizen of the Chickasaw Nation; that Woods and Elliott were citizens of the United States; and that the mining company was a corporation organized under the laws of Kansas, engaged in operating a mine in the Choctaw Nation, Elliott being president, and Woods general manager, thereof.

The bill averred that in November, 1890, Gleason and Edmonds and one Riddle, a citizen by blood of the Choctaw Nation, discovered coal, and acquired an exclusive and perpetual right to a coal claim to themselves and their assigns under section eighteen of article seven of the Choctaw constitution; the laws, usages and customs of that nation; and acts of the Choctaw Council; and that in February, 1898, Riddle conveyed his undivided one-third interest in the coal claim to Ansley.

That Gleason, Edmonds and Riddle, in 1896, contracted with Woods to work the mine, and that Woods contracted with the mining company for the working of the same, and that under the agreements Gleason, Edmonds and Riddle were to receive a royalty.

That Ainsworth and Burriss were coal trustees designated by the governors of the Choctaw and Chickasaw Nations, respectively, and appointed by the President, under the act of Congress of June 28, 1898, 30 Stat. 495, 510, c. 517, which act ratified an agreement with the Choctaw and Chickasaw Nations, known as the "Atoka Agreement," also afterwards ratified by the people of said nations, and operated to annul all individual leases and to prohibit the payment to or receipt by individuals of any royalty on coal, and provided that all royalties should be paid into the Treasury of the United States for the benefit of the tribes, to be drawn therefrom under such rules and regulations as should be prescribed by the Secretary of the Interior, and that all leases for the working of coal lands entered into by and

between persons or corporations desiring to mine coal and the mining trustees of the Choctaw and Chickasaw Nations should be approved by the Secretary of the Interior.

.The bill was filed to enjoin Woods, Elliott and the mining company from entering into a lease with Ainsworth and Burriss, mining trustees of the Choctaw and Chickasaw Nations, and denied on various grounds the constitutionality and validity of the provisions of the act of Congress.

The United States Court for the Central District of the Indian Territory, Clayton, J., presiding, held that there was no equity in the bill, and sustained a demurrer thereto, and, complainants declining to plead further, dismissed the bill with costs, whereupon an appeal was allowed to this court.

*Mr. Yancey Lewis* and *Mr. J. H. Gordon* for appellants.

*Mr. J. W. McLoud* for appellees.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The objection of want of jurisdiction over this appeal meets us on the threshold.

By the act of March 1, 1889, entitled "An act to establish a United States Court in the Indian Territory, and for other purposes," 25 Stat. 783, c. 333, a court was established with a single judge, whose jurisdiction extended over the Indian Territory, and it was provided that two terms of said court should be held each year at Muscogee in that Territory, and such special sessions as might be necessary for the dispatch of business in said court at such time as the judge might deem expedient.

May 2, 1890, an act was passed "To provide a temporary government for the Territory of Oklahoma, to enlarge the jurisdiction of the United States Court in the Indian Territory, and for other purposes," 26 Stat. 81, 93, 94, c. 182, §§ 29, 30 and 31, which defined the Indian Territory; gave additional jurisdiction to the court in that Territory as therein set forth; and, for the purpose of holding terms of the court, divided the Territory into three specified divisions.

By section five of the judiciary act of March 3, 1891, c. 517, 26 Stat. 826, as amended, appeals or writs of error might be taken from the District and Circuit Courts directly to this court in cases in which the jurisdiction of the court was in issue; of conviction of a capital crime; involving the construction or application of the Constitution of the United States; and in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority, was drawn in question.

By section six, the Circuit Courts of Appeals established by the act were invested with appellate jurisdiction in all other cases.

The thirteenth section read: "Appeals and writs of error may be taken and prosecuted from the decisions of the United States Court in the Indian Territory to the Supreme Court of the United States, or to the Circuit Court of Appeals in the Eighth Circuit, in the same manner and under the same regulations as from the Circuit or District Courts of the United States, under this act."

March 1, 1895, an act was approved entitled "An act to provide for the appointment of additional judges of the United States Court in the Indian Territory." 28 Stat. 693, c. 145. This act divided the Indian Territory into three judicial districts, to be known as the Northern, Central and Southern Districts, and provided for two additional judges for the court, one of whom should be judge of the Northern District, and the other judge of the Southern District, and that the judge then in office should be judge of the Central District. The judges were clothed with all the authority, both in term time and in vacation, as to all matters and causes, both criminal and civil, that might be brought in said districts, and the same superintending control over commissioners' courts therein, the same authority in the judicial districts to issue writs of *habeas corpus*, etc., as by law vested in the judge of the United States Court in the Indian Territory, or in the Circuit and District Courts of the United States. The judge of each district was authorized and empowered to hold court in any other district, for the trial of any case which the judge of such other district was disqualified from

trying, and whenever on account of sickness, or for any other reason, the judge of any district was unable to perform the duties of his office, it was provided that either of the other judges might act in his stead in term time or vacation. All laws theretofore enacted conferring jurisdiction upon the United States courts held in Arkansas, Kansas and Texas, outside of the limits of the Indian Territory, as defined by law, as to offences committed within the Territory, were repealed, and their jurisdiction conferred after September 1, 1896, on the "United States Court in the Indian Territory."

Section eleven of this act read as follows:

"SEC. 11. That the judges of said court shall constitute a court of appeals, to be presided over by the judge oldest in commission as chief justice of said court; and said court shall have such jurisdiction and powers in said Indian Territory and such general superintending control over the courts thereof as is conferred upon the Supreme Court of Arkansas over the courts thereof by the laws of said State, as provided by chapter forty of Mansfield's Digest of the Laws of Arkansas, and the provisions of said chapter, so far as they relate to the jurisdiction and powers of said Supreme Court of Arkansas as to appeals and writs of error, and as to the trial and decision of causes, so far as they are applicable, shall be, and they are hereby, extended over and put in force in the Indian Territory; and appeals and writs of error from said court in said districts to said appellate court, in criminal cases, shall be prosecuted under the provisions of chapter forty-six of said Mansfield's Digest, by this act put in force in the Indian Territory. But no one of said judges shall sit in said appellate court in the determination of any cause in which an appeal is prosecuted from the decision of any court over which he presided. In case of said presiding judge being absent, the judge next oldest in commission shall preside over said appellate court, and in such case two of said judges shall constitute a quorum. In all cases where the court is equally divided in opinion, the judgment of the court below shall stand affirmed.

"Writs of error and appeals from the final decisions of said appellate court shall be allowed, and may be taken to the Cir-

cuit Court of Appeals for the Eighth Judicial Circuit in the
same manner and under the same regulations as appeals are
taken from the Circuit Courts of the United States. Said appel-
late court shall appoint its own clerk, who shall hold his office
at the pleasure of said court, and who shall receive a salary of
one thousand two hundred dollars per annum. The marshal of
the district wherein such appellate court shall be held shall be
marshal of such court. Said appellate court shall be held at
South McAlester, in the Choctaw Nation, and it shall hold two
terms in each year, at such times and for such periods as may be
fixed by the court."

The Indian Appropriation Act of June 10, 1896, 29 Stat.
321, 339, c. 398, in respect of the proceedings therein referred to,
provided that "if the tribe, or any person, be aggrieved with
the decision of the tribal authorities or the commission provided
for in this act, it or he may appeal from said decision to the
United States District Court : *Provided, however,* that the ap-
peal shall be taken within sixty days, and the judgment of the
court shall be final."

It has been ruled that the court thus described as the "United
States District Court" was the United States Court in the In-
dian Territory. *Stephens* v. *Cherokee Nation,* 174 U. S. 477.

By the Indian Appropriation Act of June 7, 1897, c. 3, 30
Stat. 84, provision was made for the appointment of an addi-
tional judge for the United States Court in the Indian Territory,
who was to hold court at such places in the several judicial dis-
tricts therein, and at such times, as the appellate court of the
Territory might designate. This judge was to be a member of
the appellate court and have all the authority, exercise all the
powers, and perform the like duties as the other judges of the
court, and it was "*Provided,* That no one of said judges shall
sit in the hearing of any case in said appellate court which was
decided by him."

By this act it was also provided :

"That on and after January first, eighteen hundred and
ninety-eight, the United States courts in said Territory shall
have original and exclusive jurisdiction and authority to try and
determine all civil causes in law and equity thereafter instituted,

and all criminal causes for the punishment of any offence committed after January first, eighteen hundred and ninety-eight, by any person in said Territory, and the United States commissioners in said Territory shall have and exercise the powers and jurisdiction already conferred upon them by existing laws of the United States as respects all persons and property in said Territory; and the laws of the United States and the State of Arkansas in force in the Territory shall apply to all persons therein, irrespective of race, said courts exercising jurisdiction thereof as now conferred upon them in the trial of like causes; and any citizen of any one of said tribes otherwise qualified who can speak and understand the English language may serve as a juror in any of said courts."

The Indian Appropriation Act of July 1, 1898, 30 Stat. 591, c. 545, contained the following:

"Appeals shall be allowed from the United States courts in the Indian Territory direct to the Supreme Court of the United States to either party, in all citizenship cases, and in all cases between either of the Five Civilized Tribes and the United States involving the constitutionality or validity of any legislation affecting citizenship, or the allotment of lands, in the Indian Territory, under the rules and regulations governing appeals to said court in other cases: *Provided,* That appeals in cases decided prior to this act must be perfected in one hundred and twenty days from its passage; and in cases decided subsequent thereto, within sixty days from final judgment; but in no such case shall the work of the commission to the Five Civilized Tribes be enjoined or suspended by any proceeding in, or order of, any court, or of any judge, until after final judgment in the Supreme Court of the United States. In case of appeals, as aforesaid, it shall be the duty of the Supreme Court to advance such cases on the docket and dispose of the same as early as possible."

In *Stephens* v. *Cherokee Nation,* 174 U. S. 445, it was held that the appeal thus granted was intended to extend only to the constitutionality or validity of the legislation affecting citizenship or allotment of land in the Indian Territory.

Thus it is seen that the act of March 1, 1895, created a Court

of Appeals in the Indian Territory, with such superintending control over the courts in that Territory as the Supreme Court of Arkansas possessed over the courts of that State by the laws thereof; and the act also provided that "writs of error and appeals from the final decisions of said appellate court shall be allowed, and may be taken to the Circuit Court of Appeals for the Eighth Judicial Circuit in the same manner and under the same regulations as appeals are taken from the Circuit Courts of the United States," which necessarily deprived that court of jurisdiction of appeals from the Indian Territory trial court under section 13 of the act of 1891.

: Prior to the act of 1895, the United States Court in the Indian Territory had no jurisdiction over capital cases, but by that act its jurisdiction was extended to embrace them, and we held in *Brown* v. *United States*, 171 U. S. 631, that this court had no jurisdiction over capital cases in that court, the appellate jurisdiction in such cases being vested in the appellate court of the Indian Territory.

In *Stephens* v. *Cherokee Nation*, we thought it unnecessary to determine whether the effect of the act of 1895 was to render the thirteenth section of the act of 1891 wholly inapplicable, as the judgments of the United States courts in the Indian Territory in the cases there considered were made final below by the act of 1896, and the appeals were regarded as having been in terms granted from those judgments by the act of 1898.

But this case is not affected by the act of 1898, and we are of opinion that it does not come within the thirteenth section of the act of 1891. In accordance with the legislation subsequent to 1891, the appeal should have been prosecuted to the Court of Appeals in the Indian Territory. The question whether or not an appeal would lie to this court from that court does not arise on this record.

*Appeal dismissed.*